UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

---

In re:                                                    Case No. GG 05-08762
                                                          Chapter 7
THOMAS J. HUNTER,

     Debtor.

_____/

COMFORT CONTROL SUPPLY
COMPANY, INC.,
d/b/a JOHNSTONE SUPPLY,

     Plaintiff,                                     Adv. Proc. No. 06-80460

v.

THOMAS J. HUNTER,

     Defendant.

_____/

## OPINION REGARDING NONDISCHARGEABILITY
## OF MICHIGAN BUILDERS TRUST FUND ACT DEBT

Appearances:

Charles A. Lawler, Esq., Lansing, Michigan, attorney for Plaintiff, Comfort Control
     Supply Company, Inc. d/b/a Johnstone Supply.

Thomas J. Hunter, Pro Se Defendant.


## I. ISSUE.

Does Thomas J. Hunter ("Mr. Hunter") owe Comfort Control Supply

Company, Inc. ("Comfort") a nondischargeable debt for defalcation while acting in

a fiduciary capacity, 11 U.S.C. § 523(a)(4), based upon violations of the Michigan

Builders Trust Fund Act, Mich. Comp. Laws Ann. § 570.151?

1

## II. JURISDICTION.

This court has subject matter jurisdiction over this bankruptcy case. 28 U.S.C. § 1334. The bankruptcy case and all related proceedings, including adversary proceedings and contested matters, have been referred to this court for decision. 28 U.S.C. § 157(a); L.R. 83.2(a) (W.D. Mich.). This adversary proceeding is a core proceeding because it involves a determination regarding the dischargeability of a debt. 28 U.S.C. § 157(b)(2)(I). This opinion contains the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

## III. FACTS.

Mr. Hunter filed a voluntary petition for relief under chapter 7 on June 22, 2005. The major cause of Mr. Hunter's financial problems was the failure of Breen Heating & Cooling Co., Inc., a Michigan corporation (hereinafter "Breen"). Breen was a heating and air conditioning ("HVAC") contractor whose principal business was constructing and installing HVAC systems in new or remodeled homes, as well as selling related HVAC materials over-the-counter at its Sparta, Michigan business location. Mr. Hunter was the president and owner of Breen. (Exh. A.) He controlled Breen's day-to-day business operations and had check signing authority for Breen.

Comfort was a major supplier of HVAC materials to Breen throughout Mr. Hunter's ownership. Mr. Hunter personally guaranteed Breen's debts to Comfort. (Exh. A.)

By the latter part of 2001, Breen was seriously in arrears on its open account purchases from Comfort. In October, 2001, Comfort placed Breen on

2

COD terms for new purchases. In November, 2001, Comfort changed the terms to COD plus 25%. Breen's sales fell off significantly beginning in April, 2002 and it ceased business in 2002. When it closed, Breen owed Comfort a substantial balance.

Shortly after Breen terminated its operations, Comfort brought a state court lawsuit against both Breen and Mr. Hunter in the 63rd District Court in Kent County, Michigan. This proceeding resulted in a Settlement Agreement wherein Breen and Mr. Hunter agreed to pay Comfort $26,000 in installment payments over a specified time period. Breen and Mr. Hunter made payments under that Settlement Agreement (Exh. 1), totaling approximately $10,600 but, ultimately, defaulted under the terms of the Settlement Agreement.

Comfort then brought a second lawsuit, based upon the Settlement Agreement, in the Circuit Court for Ingham County, Michigan. This resulted in a Joint and Several Judgment against Breen and Mr. Hunter dated August 24, 2004 in the amount of $35,621.28, plus accrued interest and $1,000 in attorney's fees. (Exh. 4.)

Following the filing of Mr. Hunter's bankruptcy case on June 22, 2005, Comfort brought this adversary proceeding against Mr. Hunter alleging that all, or a portion, of the debt owed to Comfort was nondischargeable under 11 U.S.C. § 523(a)(4)[1] because it resulted from fraud or defalcation while Mr. Hunter was acting in a fiduciary capacity. Specifically, Comfort alleges that Mr. Hunter received payments from contractors and property owners on construction

---

[1]   The Bankruptcy Code is set forth in 11 U.S.C. §§ 101-1532. Statutory references to the Bankruptcy Code are designated as "§ ___."

3

projects for which Comfort had supplied materials. Comfort asserts that these funds were impressed with a statutory trust created by the so-called Michigan Builders Trust Fund Act, Mich. Comp. Laws Ann. § 570.151, ("MBTFA"). Before the trial commenced, Comfort brought three separate motions for summary judgment. All motions were denied because material contested facts existed.

A precise determination of exactly which invoices to Breen from Comfort remain unpaid, and which invoices are subject to the MBTFA, is complicated by a number of factors, including:

1.　At the time Breen was placed on COD, some or all of its previous balance was converted on Comfort's books from accounts receivable to a note payable;

2.　After November, 2001, Breen was paying an extra 25% together with its COD purchases, with the "over payments" then being credited toward payment of the old invoices which made up the note;

3.　Comfort, Breen and Mr. Hunter attempted to settle Comfort's state court collection litigation by entering into the Settlement Agreement, pursuant to which Breen or Mr. Hunter made a number of installment payments not designated to any particular invoices;

4.　Also, in a number of instances, Breen or Mr. Hunter made payments and directed that certain specific invoices be paid, but Comfort failed or neglected to follow the payment instructions;

4

5.    After its sales to Breen ended, Comfort changed its computer system for financial accounting, resulting in the loss or destruction of a number of its records; and

6.    Comfort's original bookkeeper during the period of Comfort's sales to Breen and the payments on account from Breen or Mr. Hunter is no longer employed and was not available to testify.

Comfort's current bookkeeper, Ms. Garbrecht-Sheneman (the "book-keeper"), testified credibly that she had done her best to reconstruct a list of invoices that Comfort believes to be unpaid and nondischargeable based upon the MBTFA.  However, because of the various problems, the bookkeeper was not certain that the list she prepared was completely accurate.  Per the list, the aggregate debt is $28,626.34 in accordance with the summary of unpaid invoices. (Exh. 10.)  Comfort alleges that this aggregate debt, which is reflected in 142 separate invoices, is nondischargeable because each invoice: is for building materials delivered to construction jobs being performed by Breen; relates to a job for which Breen was paid in full by the owner or general contractor; and was never paid by Breen.

Mrs. Noel Hunter ("Mrs. Hunter") was the treasurer and bookkeeper for Breen.  She testified credibly that Breen *had* directed payments regarding 84 of the 142 invoices.  (Exh. AA.)  She produced copies of check vouchers showing which invoices were to be paid by the checks to Comfort.  (Exh. Y and Z.)  She testified, without contradiction, that she sent Comfort a copy of the vouchers directing payment of the particular invoices with the checks and that the checks

5

were honored. It was stipulated that Mr. Hunter had proofs with regard to each of the 84 "check-marked" invoices on Exh. AA (which is an annotated version of Exh. 10 originally introduced by Comfort).

Comfort argues that Mrs. Hunter's testimony and supporting records should be discounted or ignored because she failed to produce any of the original cancelled checks. The court disagrees. Mrs. Hunter's records and supplementary oral testimony persuasively establish that Breen paid *specific* invoices and directed Comfort to apply payments to those *specific* invoices. Comfort, perhaps because of its change in computer systems, loss of records, or absence of its former bookkeeper, submitted no evidence to contradict or undercut Mrs. Hunter's testimony.

Mr. Hunter also credibly testified about all the invoices that Comfort claimed were unpaid and allegedly subject to the MBTFA. His testimony included explanations about the 58 specific invoices for which there was no showing of directed payment. Mr. Hunter admitted that the majority of these invoices related to construction projects on which Breen had earned a gross profit and had been paid by the owner or contractor in full. However, with regard to 18 specific invoices, he testified credibly that the invoice was either for warranty work for which he was not paid by the customer or contractor, or for goods unassociated with a construction project, i.e., an "over-the-counter sale," which went into Breen's general inventory rather than being purchased for a specific job.

After 10 partial days of trial, the court took the adversary proceeding under advisement.

## IV. DISCUSSION.

The Bankruptcy Code "does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity . . . ." § 523(a)(4). The Sixth Circuit Court of Appeals defines the term "fidicuary capacity" in § 523(a)(4) more narrowly than the phrase is construed in other circumstances. Shafer Redi-Mix, Inc. v. Craft, 414 B.R. 165, 171 (W.D. Mich. 2009) (Neff, J.) (citing Bd. of Trustees of the Ohio Carpenters Pension Fund v. Bucci (In re Bucci), 493 F.3d 635, 639 (6th Cir. 2007)). For purposes of § 523(a)(4), the requisite fiduciary obligations occur "only [in] situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." Id. (quoting In re Bucci, 493 F.3d at 639-40). The express or technical trust relationship relied upon by Comfort is created under the MBTFA.[2]

The MBTFA states:

In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

---

[2] Although the Michigan statute is the Michigan Building Contract Fund Act, it is often referred to as the "Michigan Builders Trust Fund Act" or "MBTFA." Shafer Redi-Mix, Inc., 414 B.R. at 171. In this opinion, the court refers to the statute as the "MBTFA."

7

Mich. Comp. Laws Ann. § 570.151. In other words, the statute "imposes a 'trust' upon the building contract fund paid by any person to a contractor or subcontractor for the benefit of the person making the payment, contractors, laborers, subcontractors and materialman." Carlisle Cashway, Inc. v. Johnson (In re Johnson), 691 F.2d 249, 252 (6th Cir. 1982) (citing Mich. Comp. Laws Ann. § 570.151).[3] "The contractor or subcontractor receiving the payments is the 'trustee.'" Id. The statute mandates that the trustee-recipient of the funds use them for the required purpose to *first* pay downstream laborers, materialmen, or subcontractors, before the funds are used for any other purpose. Id.; see Kriegish v. Lipan (In re Kriegish), 97 Fed. Appx. 4 (6th Cir. 2004) (subcontractor who used MBTFA funds to pay overhead and expenses on other projects violated MBTFA).

To establish a *prima facie* nondischargeability cause of action based upon alleged violations of the MBTFA, a creditor-beneficiary must prove that: (1) the debtor-defendant is a contractor or subcontractor in the building construction industry; (2) a person paid the debtor for labor or materials to be used on the construction project; (3) the debtor retained or used a portion or all of the funds; (4) for any purpose other than to first pay laborers, subcontractors or material men; (5) who were engaged or hired by the debtor for the construction project. Astro Building Supplies, Inc. v. Slavik (In re Slavik), 426 B.R. 711, 716 (Bankr. E.D. Mich. 2010) (McIvor, J.) (citing DiPonio Constr. Co., Inc. v. Rosati Masonry

---

[3] Johnson was decided under section 17(a)(4) of the prior Bankruptcy Act. However, it remains good law under current § 523(a)(4) of the Bankruptcy Code. See Patel v. Shamrock Floorcovering Services, Inc. (In re Patel), 565 F.3d 963, 968 (6th Cir. 2009).

Co., Inc., 246 Mich. App. 43, 631 N.W.2d 59, 62 (2001)), aff'd, __ B.R. __, 2010 WL 2772509 (E.D. Mich. July 13, 2010) (Edmonds, J.). The creditor-beneficiary must prove each of these elements by a preponderance of evidence. Butler v. Clark (In re Clark), 202 B.R. 243, 252 (Bankr. W.D. Mich. 1996) (citing Grogan v. Garner, 498 U.S. 279, 291, 111 S.Ct. 654, 661 (1991) (nondischargeable debt actions determined by preponderance of evidence)). If the creditor-beneficiary fails to prove even one element respecting the project in question, the debtor prevails. Further, if there are many construction projects involved (as there are in this adversary proceeding), the creditor-beneficiary must prove all elements for *each* project; each separate construction project constitutes a separate MBTFA statutory trust.

Before the court addresses the nondischargeable debt issue, the amount of the debt that is covered by the MBTFA needs to be examined. Specifically, the court must review how Breen or Mr. Hunter made payments and how Comfort applied those payments.

The Bankruptcy Code does not address how any given payment is to be applied toward indebtedness. Corradini v. Corradini (In re Corradini), 276 B.R. 571, 575-76 (Bankr. W.D. Mich. 2002). However, under applicable state law, there are rules relating to application of payments received by a creditor. Michigan law provides that "a debtor may direct application of a payment before

9

or at the time it is made." Id. (citing People ex rel. Michigan Electric Supply Co. v. Vandenburg Electric Co., 343 Mich. 87, 90, 72 N.W.2d 216, 218 (1955)).[4]

In this adversary proceeding, Comfort's nondischargeable debt assertion arises from 142 invoices owed by Breen or Mr. Hunter based upon 142 separate jobs. (Exh. 10 and attachment.)[5] However, Mrs. Hunter's testimony and Exhs. N and AA establish, by more than a preponderance of the evidence, that Breen directed payment of the 84 invoices which are "check-marked" on Exh. AA. Because Breen directed payment of these 84 invoices, the debts represented by those invoices were completely satisfied as a matter of law. The "check-marked" invoices total $17,986.75. [6] Subtracting this amount from Comfort's original asserted MBTFA debt of $28,626.34 reduces the possible nondischargeable debt owed by Mr. Hunter to Comfort to $10,639.59.

The court has also examined the unpaid invoices listed on Exh. AA for which payment was not directed by Breen. The court finds that, of the 58 invoices for which there was no directed payment, 18 of those invoices, totaling

---

[4] If the debtor fails to direct how the payment is to be applied, "the creditor may apply [the payment] as he pleases either at the time of payment or afterwards, if before controversy arises concerning it." In re Corradini, 276 B.R. at 576 (quoting People ex rel. Michigan Electric Supply Co., 343 Mich. at 90, 72 N.W.2d at 218). "[I]n the absence of such action by either debtor or creditor, … [if] there is no evidence of any understanding to the contrary, the credit will be considered as applied to debits in the order of time in which the debits occurred." Id. (quoting People ex rel. Michigan Electric Supply Co., 343 Mich. at 90, 72 N.W.2d at 218).

[5] Some of the claimed and allegedly unpaid invoices are de minimus. As examples, Comfort claims a debt of $1.94 on the "Ann" job and a debt of $6.34 on the "Swears 306" job.

[6] The debts/invoices that are satisfied are shown on Exh. AA. In the column designated "Trust Fund Invoices" by Comfort, each invoice that has a "check-mark" next to it has been previously paid, has been satisfied, and may not be collected by Comfort.

$1,828.44, were related to restocking, over-the-counter sales, or warranty work. [7]

Generally, when "a supplier delivers materials to a builder or contractor for use in whatever projects the builder undertakes, and payment is received from the ongoing proceeds generated by the builder or contractor's business, rather than payments from specifically identified projects" a fiduciary obligation does not arise between the supplier and the builder or contractor. Slavik, 426 B.R. at 717. Therefore, these invoices are not covered by the MBTFA. Subtracting the non-MBTFA invoices (totaling $1,828.44) from the unpaid invoices ($10,639.63) leaves a balance of $8,811.19.

With regard to the remaining invoices, which total $8,811.19, the court finds that Comfort has proven all elements required to establish a *prima facie* case that the invoices represent unpaid MBTFA obligations. However, this does not end the court's inquiry.

In nondischargeability actions under § 523(a)(4), after a creditor-beneficiary establishes a *prima facie* case that a trust exists under the MBTFA, "the burden shifts to the [debtor-trustee] to prove that he did not defalcate funds received in trust." Slavik, 426 B.R. at 716 (citing Capella v. Little (In re Little), 163 B.R. 497 (Bankr. E.D. Mich. 1994)). To meet this burden, the debtor-trustee may demonstrate that he has used *all* funds received to pay the MBTFA beneficiaries, i.e., the "downstream" contractors, laborers, subcontractors, materialmen and suppliers. Most often, if a debtor is able to show that all trust

---

[7]  The invoices that are *not* MBTFA debts are the following "jobs" listed on Exh. AA:  "Roslin," "PO #0504," "marble," "22 Mile Rd.," "PO# 7631," "Ensley," "Browey," "Bumbstead," "Boiler," "Toth," "Vanderhout," "North Kent Towing," "Clayton," "Debester," "Berdan," "Dann," "Big Rapids," and "Hoskins."

funds were properly paid as legally required, and other MBTFA beneficiaries still remain unpaid, it is because the debtor underbid on the construction project.

Mr. Hunter has not presented an accounting regarding any of the MBTFA projects to demonstrate that an underbid occurred or that all trust funds were properly paid to the downstream beneficiaries, including Comfort. Therefore, Mr. Hunter has MBTFA liability to Comfort in the amount of $8,811.19.

## V. CONCLUSION.

Mr. Hunter owes Comfort a nondischargeable debt under § 523(a)(4) based upon the MBTFA. The amount of the nondischargeable debt is $8,811.19. The judgment shall bear interest at the federal judgment interest rate of 0.26% per annum. Comfort is also awarded costs for its filing fee in the amount of $250.00. A separate judgment shall be entered accordingly.

Honorable James D. Gregg
Chief United States Bankruptcy Judge

Dated this 21st day of
September, 2010
at Grand Rapids, Michigan